**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SMOOT CONSTRUCTION COMPANY OF WASHINGTON, D.C.,** | : | |
| | : | Case No. 2:22-cv-1707 |
| **Plaintiff,** | : | |
| | : | Judge _____ |
| v. | : | |
| | : | Magistrate Judge _____ |
| **THE SMOOT CORPORATION,** | : | |
| | : | |
| and | : | |
| | : | |
| **SMOOT CONSTRUCTION COMPANY OF OHIO,** | : | |
| | : | |
| **Defendants.** | : | |

## **COMPLAINT**

Plaintiff Smoot Construction Company of Washington, D.C. ("Smoot Construction"), for its Complaint against The Smoot Corporation ("S. Corporation") and Smoot Construction Company of Ohio ("S. Construction"), alleges as follows:

## **THE PARTIES**

1.  Plaintiff Smoot Construction is a District of Columbia corporation with its principal place of business in Washington, D.C. It provides general contracting, design-build and construction management services in the District of Columbia and the States of Maryland, Virginia and Massachusetts. It is registered to do business in Ohio and is obtaining the required licenses to commence business in Ohio. Mark S. Cain, its majority shareholder, serves as its President and Chief Executive Officer. Within the State of Ohio, it will operate under the registered trade name S. Cain Development and Construction.

2. Defendant S. Corporation is an Ohio corporation with its principal place of business in Franklin County, Ohio.  S. Corporation is the corporate parent of S. Construction, its wholly-owned subsidiary.

3. Defendant S. Construction is an Ohio corporation with its principal place of business in Franklin County, Ohio.  Its services, mostly undertaken in the Columbus metropolitan area, include construction management, design-build, general contracting, preconstruction, and self-performance.  Lewis Smoot, Sr. is its majority shareholder, holding his shares either directly or through trusts.  Lewis Smoot, Jr. was recently installed as its Chairman, President and Chief Executive Officer.

4. Lewis Smoot, Sr., his son Lewis, Jr. and other members of their immediate family are also shareholders in Smoot Construction.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Venue is conferred under 28 U.S.C. § 1391 inasmuch as, among other things, Defendants reside in this judicial district.

## COUNT I

**(Breach of Administrative Services Agreement—Costs Mark-Up)**

7. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

8. On or about May 1, 2005, Smoot Construction and Defendant S. Corporation entered into an Administrative Services Agreement (the "ASA"). Defendants possess copies of the ASA and it is therefore not attached to this Complaint.

9. Under the ASA, Defendant S. Corporation provides certain administrative services to Smoot Construction, including, without limitation: financial accounting support; information technology support, including licensing; coordination of outside audit services; estimating support services; general administrative services, including personnel benefits; and such "other services as [Smoot] Construction may reasonably request" (collectively, the "Services").

10. The ASA is an evergreen contract that specifies it is "automatically extended for additional three-year periods unless either party notifies the other party of its intent not to renew at least ninety (90) days prior to the last day of the then current term. Notwithstanding the foregoing, either party may terminate [the ASA] during May of any year of the term upon giving at least thirty (30) days' prior written notice. . . ."

11. Neither party gave written notice terminating the ASA at least thirty (30) days prior to May, 2021; therefore, the term of the ASA extends until at least April 30, 2022.

12. In consideration for providing the Services, Smoot Construction agreed to pay Fees to Defendant S. Corporation equal to "a yearly retainer of $60,000" and "an amount equal to the Actual Cost incurred by Smoot for Time expended in rendering its Services…, against which shall be credited the annual retainer and reciprocal services as provided by [Smoot Construction]." The first paragraph of Section 2(a) of the ASA states in its entirety:

> Service Fees. In consideration for the Services to be rendered by [Defendant S. Corporation] under this Agreement, [Smoot Construction] shall pay [Defendant S. Corporation] a yearly retainer of $60,000 for general administrative support payable no

> later than the fifteenth day of the first yearly anniversary (May 15) of the Agreement, and then quarterly thereafter. [Smoot Construction] shall also pay [Defendant S. Corporation] an amount equal to the ***Actual Cost*** incurred by [Defendant S. Corporation] for Time expended in rendering the Services as set forth above, against which shall be credited the annual retainer and reciprocal services as provided by [Smoot Construction] as set forth below.

(Emphasis added.)

13. The ASA expressly provides that the reimbursable "Actual Cost" includes no mark up on the costs Defendant S. Corporation incurs in providing the Services:

> For the purposes of this Agreement, "Actual Cost" or "Time" shall be charged in accord with the total cost of labor or other direct costs as shown in the "Timberline Accounting Software" for any particular service, engagement, task or direct cost. ***There shall be no mark up paid on said costs incurred***.

>> [Section 2(a) of the ASA;
>> (emphasis added).]

14. Nothing in the ASA authorized S. Corporation to charge or obligates Smoot Construction to pay fees other than the "Actual Cost" of Services provided to it.

15. Section 7(i) of the ASA requires all amendments to be in writing. The ASA has never been amended.

16. The "financial accounting support" Services Defendant S. Corporation and its staff provided to Smoot Construction included: receiving all revenue, and paying all expenses, of Smoot Construction; recording all transactions on the books and records of Smoot Construction; and assuring that all payments were made consistent with contractual terms, including those for Services provided by S. Corporation.

17. S. Corporation breached its obligations under the ASA in multiple respects. Contrary to the specific prohibition against "mark-ups" in excess of Actual Cost, S. Corporation

4

imposed a mark-up of approximately seven percent (7%) over the Actual Cost incurred by S. Corporation for Time expended in rendering "Job Cost" Services recorded in the Timberline Accounting Software. In years 2016 through 2020, these unauthorized mark-ups totaled in excess of $85,000 with a currently undetermined additional amount for 2021.

18. S. Corporation also breached the ASA by failing to maintain time and cost records for the Services (other than "Job Cost" charges recorded in the Timberline Accounting Software) provided to Smoot Construction. Instead, S. Corporation charged Smoot Construction, and paid itself, a unilaterally determined portion of the overhead costs incurred by S. Corporation rather than the Actual Cost of the Services Smoot Construction received (the "Unauthorized Overhead Allocation"). Contrary to the requirements of the ASA, S. Corporation kept no records of the Time or Actual Cost incurred in providing these Services nor did it invoice Smoot Construction as required. S. Corporation simply allocated a unilaterally determined portion of its overhead to Smoot Construction based on Smoot Construction's revenues or profitability, or S. Corporation's need for cash. Nothing in the ASA permits such an Unauthorized Overhead Allocation.

19. The amount S. Corporation charged Smoot Construction in the last six years based on the Unauthorized Overhead Allocation instead of Actual Cost of Services provided to Smoot Construction totaled more than Three Million Dollars ($3,000,000).

20. As a result of S. Corporation's breach, Smoot Construction was overcharged in an amount equal to the total Fees for Services (excluding "Job Cost" Services) paid to S. Corporation less Actual Costs S. Corporation incurred to provide those Services.

21. Smoot Construction has performed all of its obligations under the ASA.

## COUNT II

### (Breach of Administrative Services Agreement—Claim for Money Owed)

22. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

23. In "provid[ing] financial accounting support" to Smoot Construction under the ASA, Defendant S. Corporation established a Consolidation Account into which it deposited all of Smoot Construction's receipts, as well as those of Defendant S. Construction. In short, Defendant S. Corporation commingled the receipts of Smoot Construction and Defendant S. Construction in the Consolidation Account and used the receipts of the two companies to pay their respective creditors without regard to the source of the monies.

24. In late August, 2021, Smoot Construction demanded an accounting and remittance of the balance of its monies in the Consolidation Account. Although repeated demands have been made during the last six months for this accounting, Defendant S. Corporation has consistently refused to provide any reconciliation of Consolidation Account balances.

25. When it made its initial demand for an accounting, Smoot Construction estimated, based upon financial statements prepared by Defendant S. Corporation and CIBC bank records, that S. Corporation owed it approximately Seven Million Five Hundred Thousand Dollars ($7,500,000) from the Consolidation Account.

26. Defendant S. Corporation also deposited the Self-Insured Subcontractors' Default Insurance ("SDI") loss reserves of Smoot Construction in the Consolidation Account. These deposits included approximately $2,300,000 through August 2021 and, on information and

6

belief, an additional amount of approximately $500,000 since that date.  Defendant S. Corporation also has failed to account for these SDI funds.

27. As a result of Defendant S. Corporation's material breach of the ASA, Smoot Construction has suffered damages in an amount to be determined at trial but substantially in excess of $75,000.

## COUNT III

**(Breach of Administrative Services Agreement and Imposition of Constructive Trust)**

28. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

29. Lewis Smoot, Sr. and trusts he established are the owners of life insurance policies on his life having a total face value of Seven Million Dollars ($7,000,000) (the "Life Insurance Policies").  These policies require substantial annual premium payments.

30. Lewis Smoot, Sr. was employed by Defendant S. Corporation during 2016-2019, but was never employed by Smoot Construction during that time.  Defendant S. Corporation nonetheless improperly charged Smoot Construction $584,388 for bonuses paid to Lewis Smoot, Sr. during that time to pay the premiums on his Life Insurance Policies.  S. Corporation knew Lewis Smoot, Sr. performed no services for Smoot Construction (other than as a non-compensated director) and was not entitled to receive a bonus from Smoot Construction for any purpose.

31. S. Corporation's use of funds of Smoot Construction to pay the bonuses to Lewis Smoot, Sr. breached the ASA.

32. Smoot Construction has been damaged in the amount of $584,388 and is entitled to imposition of a constructive trust upon the Life Insurance Policies, their cash value and benefits until reimbursed.

## COUNT IV

### (Declaratory Relief As To Indemnification Obligations)

33. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

34. Pursuant to Section 6(b) of the ASA, Defendant S. Corporation agreed to "indemnify, defend and hold harmless" Smoot Construction from "all losses, damages, costs, and expenses (including reasonable attorneys' fees)" resulting from "a breach by [Defendant S. Corporation] of any of its obligations under" the ASA. Section 6(b) of the ASA states in pertinent part:

> [Defendant S. Corporation] shall indemnify, defend and hold harmless [Smoot Construction], its directors, officers, employees, agents, representatives, successors, assigns, and subcontractors against all actions, claims, demands, liabilities, losses, damages, costs, and expenses (including reasonable attorneys' fees) (collectively "Losses") to the extent resulting, directly or indirectly, out of (i) an actual or alleged injury to a person or to property as a result of the negligent or intentional act or omission of [Defendant S. Construction], or (ii) a ***breach by [Defendant S. Corporation] of any of its obligations under this Agreement***.

(Emphasis added)

35. Smoot Construction has made demand upon Defendant S. Construction for an accounting and remittance of the overcharged and improper fees and wrongly withheld Consolidation Account monies. Defendant S. Construction consistently has refused to provide the requested accounting, remit the improper charges, and pay over the wrongfully withheld Consolidation Account monies.

8

36. Pursuant to the indemnity provision of Section 6(b) of the ASA, Defendant S. Corporation is liable for all attorneys' fees and expenses, including forensic accounting fees, incurred by Smoot Construction to recover the improper charges and wrongfully withheld Consolidation Account monies.

37. As alleged herein, an actual, substantial and immediate controversy exists regarding the rights, duties, and liabilities of the parties. Smoot Construction, therefore, requests declaratory judgment from this Court, pursuant to Rule 57 of the Federal Rules of Civil Procedure, that Defendant S. Construction is liable for all costs and expenses, including reasonable attorneys' fees, and forensic accounting fees, Smoot Construction incurs to recover the monetary damages sustained.

## COUNT V

### (Breach of Fiduciary Duty)

38. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

39. By commingling and holding Smoot Construction's monies in the Consolidation Account, Defendant S. Corporation assumed the status and corresponding duties of a constructive trustee and fiduciary. Smoot Construction had trust and confidence in Defendant S. Corporation and each party fully understood this.

40. Defendant S. Corporation breached its fiduciary duties by commingling monies, failing to properly account for them, and failing to remit monies owed to Smoot Construction.

41. As a result of Defendant S. Corporation's breach of its fiduciary duties,, Smoot Construction has suffered damages in an amount to be determined at trial but substantially in

excess of $75,000, and is entitled to the imposition of a constructive trust on the Consolidation Account.

## COUNT VI

### (Unjust Enrichment)

42. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

43. Pleading alternatively, Defendant S. Corporation has been unjustly enriched by imposing charges on Smoot Construction that are not authorized under the ASA, by wrongly refusing to account for and remit to Smoot Construction monies due it from the commingled monies in the Consolidation Account, and by payment of unearned bonuses from the assets of Smoot Construction to Lewis Smoot, Sr.

44. As a result, Smoot Construction has suffered damages in an amount to be determined at trial but substantially in excess of $75,000.

## COUNT VII

### (Tortious Interference)

45. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

46. Defendant S. Construction has actual knowledge of (a) the ASA between Smoot Construction and Defendant S. Company; (b) the existence and operation of the Consolidation Account; and (c) that substantial monies are due and owing to Smoot Construction.

47. Defendant S. Construction intentionally and without justification or privilege induced Defendant S. Company to breach the ASA, as described above, and otherwise interfered with the constructive trustee duties and obligations owed to Smoot Construction. Defendant S.

Construction's interference is wrongfully intended for the improper purpose of impeding the ability of Smoot Construction to lawfully compete with S. Construction.

48. As a result of the foregoing, Defendant S. Construction has proximately caused compensatory damages to Smoot Construction in an amount to be determined at trial but substantially in excess of $75,000 and is liable for punitive damages.

## COUNT VIII

### (Declaratory Relief--Competition)

49. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

50. At various times, Defendant S. Construction and its agents have falsely asserted that Smoot Construction may not compete with it within the State of Ohio despite the fact that

> (a) Smoot Construction is not subject to any contractual limitation preventing it from conducting business in the State of Ohio.
>
> (b) Even though Smoot Construction and Defendant S. Corporation have common shareholders, the formation and corporate documents for Smoot Construction do not limit the geographical scope of its business.
>
> (c) No employee or agent of Smoot Construction is subject to any contractual limitation (such as a non-compete, confidentiality, or non-solicitation agreement) preventing them from conducting business in the State of Ohio or otherwise competing with Defendant S. Construction.
>
> (d) The employees and agents of Smoot Construction are not officers or directors of Defendant S. Construction.

51. Ohio consumers of construction-related services have inquired about using the services of Smoot Construction in the State of Ohio.

52. As alleged herein, an actual, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties requiring declaratory relief from this Court to resolve this controversy. Therefore, Smoot Construction requests declaratory judgment from this Court, pursuant to Rule 57 of the Federal Rules of Civil Procedure, that Defendant Smoot Construction may, provided it otherwise satisfies all requirements of Ohio law, conduct business and compete against S. Construction in the State of Ohio.

## COUNT IX

### (Ohio Deceptive Trade Practice Act)

53. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

54. Under Section 4165.02 of the Ohio Revised Code, a person engages in a deceptive trade practice by disparaging the service or business of another by false representation of fact.

55. Statements by Defendant S. Construction that Smoot Construction cannot conduct business in the State of Ohio or compete against it are false representations of fact and unlawfully disparage Smoot Construction's services and business. Chapter 4165 of the Ohio Revised Code provides for the award of injunctive relief to provide redress for such false statements.

56. Defendant S. Construction's statement, if publicly published, would irreparably harm Smoot Construction.

57. Therefore, Smoot Construction is entitled to interim and permanent injunctive relief enjoining Defendant S. Construction and its agents from publishing the false statement that Smoot Construction may not conduct business in the State of Ohio or otherwise compete against it.

## COUNT IX

### (Demand for Accounting)

58. Smoot Construction realleges and incorporates the foregoing paragraphs as if fully rewritten herein.

59. Defendant S. Corporation's exercise of control over Smoot Construction's monies and continuing refusal to provide an accounting renders Smoot Construction's legal remedies inadequate because the precise amounts owed Smoot Construction cannot be reasonably ascertained since that information and the required records remain within the exclusive possession of Defendant S. Construction.

60. Therefore, Smoot Construction is entitled to a Court appointed accounting firm to determine the amounts due Smoot Construction, the expense of which is to be paid by Defendant S. Corporation.

WHEREFORE, Smoot Construction respectfully request relief as follows:

(1) Compensatory damages in an amount to be determined at trial.

(2) Declaratory relief as set forth above.

(3) A Court supervised accounting.

(4) Imposition of constructive trusts as set forth above.

(5) Punitive damages.

(6) Pre-and post-judgment interest.

(7) Recovery of all attorneys' fees and expenses, including forensic accounting fees incurred by Smoot Construction.

(8) Interim and permanent injunctive relief as set forth above.

(9) Any and all other relief that this Court may deem appropriate.

Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (0042679)
Trial Attorney
John W. Zeiger (0010707)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-9900
(Fax) (614) 365-7900
little@litohio.com
zeiger@litohio.com

Attorneys for Plaintiff

940453