**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Smoot Construction Company of | : | |
| Washington, D.C., | : | |
| | : | CASE NO.: 2:22-cv-1707 |
|     Plaintiff, | : | |
| | : | JUDGE MICHAEL H. WATSON |
|     vs. | : | |
| | : | MAGISTRATE CHELSEY M. VASCURA |
| The Smoot Corporation, et al., | : | |
| | : | |
|     Defendants/Counterclaimants. | : | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND VERIFIED**
**COUNTERCLAIM**
**(Jury Demand Endorsed Hereon)**

Now come Defendants, The Smoot Corporation and Smoot Construction Company of Ohio, by and through counsel, and for their Answer to Plaintiff's Complaint, sets forth as follows:

<u>THE PARTIES</u>

1.    Defendants admit that Plaintiff is a corporation engaged in design and construction services. The remaining allegations contained in Paragraph 1 of Plaintiff's Complaint are denied for want of knowledge.

2.    Defendants admit the allegations in Paragraph 2 of Plaintiff's Complaint.

3.    Defendants admit that Smoot Construction Company of Ohio is a corporation operating in Ohio and that Lewis R. Smoot Jr. is its Chairman, CEO, and President. The remaining allegations contained in Paragraph 3 of Plaintiff's Complaint are denied.

4.    Defendants admit the allegations in Paragraph 4 of Plaintiff's Complaint.

<u>JURISDICTION AND VENUE</u>

5.    Paragraph 5 refers to a legal conclusion for which no response is required; otherwise, denied.

6.      Paragraph 6 refers to a legal conclusion for which no response is required; otherwise, denied.

<u>ANSWER TO COUNT I</u>

7.      Defendants reincorporate all prior responses and denials in response to Paragraph 7 of Plaintiff's Complaint.

8.      Defendants admit the allegations contained in Paragraph 8 of Plaintiff's Complaint. A true and accurate copy of the ASA is attached hereto as Exhibit A.

9.      Defendants deny the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.     Paragraph 10 of Plaintiff's Complaint refers to a document that speaks for itself; otherwise, denied.

11.     Defendants admit that no written notice was provided. However, the parties mutually agreed to sever the ASA at the end of 2021. This agreement was memorialized in a November 12, 2021, Memorandum from The Smoot Corporation to Plaintiff employees. A true and accurate copy of this Memorandum is attached hereto as Exhibit B. The remaining allegations contained in Paragraph 11 of Plaintiff's Complaint are denied.

12.     Paragraph 12 of Plaintiff's Complaint refers to a document that speaks for itself; otherwise, denied.

13.     Paragraph 13 of Plaintiff's Complaint refers to a document that speaks for itself; otherwise, denied.

14.     Paragraph 14 of Plaintiff's Complaint refers to a document that speaks for itself; otherwise, denied.

15.     Paragraph 15 of Plaintiff's Complaint refers to a document that speaks for itself; otherwise, denied.

16.     Defendants deny the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17.     Defendants deny the allegations contained in Paragraph 17 of Plaintiff's Complaint.

18.     Defendants deny the allegations contained in Paragraph 18 of Plaintiff's Complaint.

19.     Defendants deny the allegations contained in Paragraph 19 of Plaintiff's Complaint.

20.     Defendants deny the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.     Defendants deny the allegations contained in Paragraph 21 of Plaintiff's Complaint.

<u>ANSWER TO COUNT II</u>

22.     Defendants reincorporate all prior responses and denials in response to Paragraph 22 of Plaintiff's Complaint.

23.     Defendants deny the allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.     Defendants deny the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.     Defendants deny the allegations for want of knowledge contained in Paragraph 25 of Plaintiff's Complaint.

26.     Defendants deny the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.     Defendants deny the allegations contained in Paragraph 27 of Plaintiff's Complaint.

<u>ANSWER TO COUNT III</u>

28.     Defendants reincorporate all prior responses and denials in response to Paragraph 28 of Plaintiff's Complaint.

29.     Defendants admit the allegations contained in Paragraph 29 of Plaintiff's Complaint.

30.     Defendants deny the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.     Defendants deny the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32.     Defendants deny the allegations contained in Paragraph 32 of Plaintiff's Complaint.

<u>ANSWER TO COUNT IV</u>

33.    Defendants reincorporate all prior responses and denials in response to Paragraph 33 of Plaintiff's Complaint.

34.    Paragraph 34 of Plaintiff's Complaint refers to a document that speaks for itself; otherwise, denied.

35.    Defendants deny the allegations contained in Paragraph 35 of Plaintiff's Complaint.

36.    Paragraph 36 of Plaintiff's Complaint refers to a document that speaks for itself; otherwise, denied.

37.    Defendants deny the allegations contained in Paragraph 37 of Plaintiff's Complaint.

<u>ANSWER TO COUNT V</u>

38.    Defendants reincorporate all prior responses and denials in response to Paragraph 38 of Plaintiff's Complaint.

39.    Paragraph 39 of Plaintiff's Complaint refers to a legal conclusion for which no response is required; otherwise, denied.

40.    Defendants deny the allegations contained in Paragraph 40 of Plaintiff's Complaint.

41.    Defendants deny the allegations contained in Paragraph 41 of Plaintiff's Complaint.

<u>ANSWER TO COUNT VI</u>

42.    Defendants reincorporate all prior responses and denials in response to Paragraph 42 of Plaintiff's Complaint.

43.    Defendants deny the allegations contained in Paragraph 43 of Plaintiff's Complaint.

44.    Defendants deny the allegations contained in Paragraph 44 of Plaintiff's Complaint.

<u>ANSWER TO COUNT VII</u>

45.    Defendants reincorporate all prior responses and denials in response to Paragraph 45 of Plaintiff's Complaint.

46.    Defendants deny the allegations contained in Paragraph 46 of Plaintiff's Complaint.

47.    Defendants deny the allegations contained in Paragraph 47 of Plaintiff's Complaint.

48.    Defendants deny the allegations contained in Paragraph 48 of Plaintiff's Complaint.

<u>ANSWER TO COUNT VIII</u>

49.    Defendants reincorporate all prior responses and denials in response to Paragraph 49 of Plaintiff's Complaint.

50.    Defendants deny the allegations contained in Paragraph 50 of Plaintiff's Complaint, including all subparts.

51.    Defendants deny the allegations contained in Paragraph 51 of Plaintiff's Complaint.

52.    Defendants deny the allegations contained in Paragraph 52 of Plaintiff's Complaint.

<u>ANSWER TO COUNT IX</u>

53.    Defendants reincorporate all prior responses and denials in response to Paragraph 53 of Plaintiff's Complaint.

54.    Paragraph 54 of Plaintiff's Complaint refers to a legal conclusion for which no response is required; otherwise, denied.

55.    Defendants deny the allegations contained in Paragraph 55 of Plaintiff's Complaint.

56.    Defendants deny the allegations contained in Paragraph 56 of Plaintiff's Complaint.

57.    Defendants deny the allegations contained in Paragraph 57 of Plaintiff's Complaint.

<u>ANSWER TO COUNT X</u>

58.     Defendants reincorporate all prior responses and denials in response to Paragraph 58 of Plaintiff's Complaint.

59.     Defendants deny the allegations contained in Paragraph 59 of Plaintiff's Complaint.

60.     Defendants deny the allegations contained in Paragraph 60 of Plaintiff's Complaint.

**FIRST DEFENSE**

61.     All of the actions complained of in Plaintiff's Complaint were the result of the conduct, knowledge, and/or approval of Plaintiff's President and CEO, who at the relevant times was the President of Defendants.

**SECOND DEFENSE**

62.     Defendants deny all allegations contained in the Plaintiffs, not expressly admitted in this Answer.

**THIRD DEFENSE**

63.     Plaintiff's claims are barred by the doctrine of waiver, estoppel, laches, unclean hands, or by the applicable statute of limitations.

**FOURTH DEFENSE**

64.     Plaintiff's Complaint fails to state any claim upon which relief can be granted.

**FIFTH DEFENSE**

65.     Plaintiff has failed to join necessary and indispensable parties.

**SIXTH DEFENSE**

66.     Plaintiff seeks damages for which it has waived including, but not limited to, incidental and consequential damages.

## SEVENTH DEFENSE

67. Any damages caused to Plaintiff may have been solely the result of the acts or omissions and/or conduct of other persons whom Defendants exercise no control over.

## EIGHTH DEFENSE

68. Plaintiff has failed to mitigate its damages.

## NINETH DEFENSE

69. Plaintiff's damages are offset and/or set-off by amounts owed to Defendants.

## TENTH DEFENSE

70. Plaintiff's recovery is barred by express or implied terms of the contractual or corporate relationship.

## ELEVENTH DEFENSE

71. Plaintiff's Complaint is barred due to a lack or want of consideration.

## TWELFTH DEFENSE

72. Plaintiff received all services due under the contract.

## THIRTEENTH DEFENSE

73. Plaintiff's claims are barred by the doctrines of payment, settlement, and/or release.

## FOURTEENTH DEFENSE

74. Plaintiff's own actions made performance of the contract impossible, impractical, or otherwise moot.

## FIFTEENTH DEFENSE

75. Plaintiff breached the contract discharging any remaining duty to perform.

## SIXTEENTH DEFENSE

76. All actions undertaken by and statements made by Defendants were privileged.

## SEVENTEENTH DEFENSE

77.     Defendant reserves the right to identify additional affirmative defenses in accordance with the Civil Rules as the case progresses, and additional facts are discovered.

## DEFENDANTS THE SMOOT CORPORATION AND THE SMOOT CONSTRUCTION COMPANY OF OHIO'S VERIFIED COUNTERCLAIM[1]

Now, for its Counterclaim against Plaintiff, Defendant The Smoot Corporation states as follows:

1.     Counterclaimant The Smoot Corporation brings this Counterclaim to address the deceptive trade practices in which Plaintiff is engaged. Specifically, Plaintiff (through The Smoot Corporation's former President) is actively using Counterclaimant The Smoot Corporation's trademarks in a concerted effort to portray Plaintiff as The Smoot Corporation (including iterations of the name "Smoot," Smoot "Construction" and other protected trade names and marks).

2.     It is a concerted effort by Plaintiff to capitalize on Counterclaimant The Smoot Corporation's goodwill, intellectual property, and other assets to benefit Plaintiff and its CEO. In fact, this Court need look no further than Plaintiff's Complaint itself for further proof of Plaintiff's efforts to confuse the public. In its' Complaint, Plaintiff repeatedly refers to itself as "Smoot Construction" (conveniently omitting any reference to "Washington, D.C."). While subtle, this is representative of Plaintiff's improper motivations and its' real agenda.

3.     Because The Smoot Corporation is being irreparably harmed, it brings this Counterclaim and seeks immediate injunctive relief.

## BACKGROUND OF THE FAMILY-OWNED SMOOT CORPORATION, ITS SUBSIDIARIES, AND AFFILIATED ENTITIES

---

[1] The Smoot Construction Company of Ohio is a wholly owned subsidiary of The Smoot Corporation and has a permissive license on the Smoot trade name and the registered marks referenced herein. These claims are brought jointly, to the extent that the Smoot Construction Company of Ohio is independently harmed by the uses and unfair practices described herein.

4.      In 1946, Sherman Smoot founded what is known today as "The Smoot Corporation" (i.e., the Counterclaimant) and its various subsidiaries and affiliated entities.

5.      Counterclaimant, The Smoot Corporation is an Ohio corporation with its principal place of business in Columbus, Ohio.

6.      Counterclaimant The Smoot Corporation, its predecessors, subsidiaries, and affiliated entities have been in the business of general contracting and commercial building construction under the "Smoot" trade name for approximately seventy-six (76) years.

7.      Sherman Smoot's son, Lewis R. Smoot, Sr., is the current Chairman, Emeritus of Counterclaimant The Smoot Corporation.

8.      Sherman Smoot's grandson, Lewis R. Smoot Jr., is the current CEO and President of Counterclaimant The Smoot Corporation.

9.      Plaintiff's President and CEO, Mark S. Cain, is Lewis R. Smoot, Sr.'s nephew.

10.     From 2005 until 2010, Plaintiff's President and CEO, Mark S. Cain was a Vice President of Counterclaimant The Smoot Corporation.

11.     From 2008 until 2021, Plaintiff's President and CEO, Mark S. Cain was a Director of Counterclaimant The Smoot Corporation.

12.     From 1987 through present, Plaintiff's President and CEO Mark S. Cain has been a shareholder in Counterclaimant The Smoot Corporation.

13.     From 1999 until 2005 Mark Cain was a Vice President of Plaintiff

14.     From 2005 through present, Mark Cain was a Director and President of Plaintiff

15.     From 2010 until September 2020, Mark Cain was the President of Counterclaimant The Smoot Corporation.

16. From September 2020 until August 2, 2021, Mark Cain was Co-President of Counterclaimant The Smoot Corporation.

## SMOOT CORPORATION'S REGISTERED MARKS

17. Counterclaimant The Smoot Corporation is the owner of U.S. Registration Number 4,829,887 for the standard character mark "SMOOT' for "Commercial Building General Contractor; Commercial Building Construction, in Class 37 (U.S. CLS. 100, 103 AND 106)" (Hereafter the "'887 Registration"). A true and accurate copy of this Registration is attached hereto as Exhibit C.

18. The '887 Registration reflects the mark has been in commercial use since 1986. (*See* Exhibit C).

19. Counterclaimant The Smoot Corporation registered '887 Registration with the State of Ohio (Document No. 201504901357). A true and accurate copy of the Service Mark Registration is attached hereto as Exhibit D.

20. The Ohio registration reflects that the '887 Service Mark has been in use since 1986. (*See* Exhibit D).

21. Counterclaimant The Smoot Corporation is also the owner of U.S. Registration Number 4,829,888 for the design mark consisting of "two concentric squares surrounding the stylized lettering 'SRS', to the right of which is the text 'SMOOT', underlined, below which is the word 'CONSTRUCTION'" issued for "Commercial Building General Contractor; Commercial Building Construction, in Class 37 (U.S. CLS. 100, 103 AND 106)" (Hereafter the "'888 Registration"). A true and accurate copy of this Registration is attached hereto as Exhibit E.

22. The protected design appears as:



23.     The '888 Registration has been in commercial use since 1986. (*See* Exhibit E).

24.     Counterclaimant The Smoot Corporation registered the '888 Registration with the State of Ohio (Document No. 201504901358). A true and accurate copy of this Registration is attached hereto as Exhibit F.

25.     The Ohio registration reflects that the '888 Service Mark has been in use since 1986. (*See* Exhibit F).

26.     The registrations referenced above were done under the direction of Mark Cain, as Counterclaimant The Smoot Corporation's President, reflecting an understanding that these registrations and the intellectual property which they protect belonged to Counterclaimant The Smoot Corporation, not Plaintiff.

27.     The '887 Registration and the '888 Registration (collectively the "Registered Marks") confer exclusive nationwide rights to Counterclaimant The Smoot Corporation to use the Registered Marks in connection with the services identified for in the Registered Marks.

28.     The Smoot trade name and Registered Marks are inherently distinctive.

29.      Moreover, because of Counterclaimant The Smoot Corporation's substantial and continuous use and promotion of the Smoot trade name and Registered Marks, they have become known to the public as representing services of high quality.

30.     Through favorable public acceptance and recognition, the Smoot trade name and the Registered Marks continue to be assets of substantial value to Counterclaimant The Smoot Corporation, its quality, services, and goodwill.

31.     In addition to the Registered Marks, Counterclaimant The Smoot Corporation is the owner of the domain name https://smootconstruction.com/ to promote its services, the Smoot trade name, and registered marks.

32.     Plaintiff is operating the domain name https://smootconstructiondc.com/.

33.     Until late 2021, Counterclaimant the Smoot Corporation exercised control over the domain name referenced in Paragraph 33.

34.     This control included monitoring content on the website, and how the Smoot trade name and the Registered Marks were used therein.

**THE SMOOT CORPORATION'S HISTORY IN WASHINGTON D.C.**

35.     Counterclaimant The Smoot Corporation has a long history of operation in Washington D.C. and the capital region.

36.     From 1964 until 1984, Counterclaimant The Smoot Corporation's operations in the capital region were run directly by the predecessor entities to Counterclaimant The Smoot Corporation.

37.     In 1984, Plaintiff was founded as a wholly owned subsidiary of Counterclaimant The Smoot Corporation, or its predecessors.

38.     The purpose of founding Plaintiff as a wholly owned subsidiary was to provide better control and oversite in Counterclaimant The Smoot Corporation's growing general contracting and commercial building construction services within the District of Colombia and the surrounding areas.

12

39.     From 1984 until 2005, Plaintiff operated as a wholly owned subsidiary and for the exclusive benefit of Counterclaimant The Smoot Corporation and its shareholders.

40.     From 1984 until 2005, Plaintiff was involved in several projects in the capital region.

41.     In 2005, the Directors of the Smoot Corporation, in consultation with Plaintiff's then officers, including Mark Cain, determined Plaintiff needed to be reorganized due to financial struggles of the operation.

42.     Plaintiff's President and CEO Mark Cain advised Lewis R. Smoot, Sr. and the Board of Directors of Counterclaimant The Smoot Corporation that in order to take full advantage of certain funding opportunities through the District of Columbia and the Capital Region Minority Supplier Development Council, operations in the District of Columbia needed to be locally owned and operated by an individual.

43.     Plaintiff's President and CEO Mark Cain stated he was the logical choice for majority ownership.

44.     Counterclaimant The Smoot Corporation Board of Directors authorized the transfer of Plaintiff to the Counterclaimant's shareholders.

45.     To facilitate the reorganization, a stock purchase agreement was written up under which Mark Cain took immediate 51% ownership of Plaintiff through a structured purchase arrangement.

46.     At the time he signed the stock purchase agreement, took majority ownership of Plaintiff, and became President of Plaintiff, Mark Cain was a Vice President of Counterclaimant The Smoot Corporation.

47.     At the time he signed the stock purchase agreement, and took majority ownership of Plaintiff, and became President of Plaintiff, Mark Cain was a shareholder of Counterclaimant The Smoot Corporation.

48.     All of Cain's payments toward the stock purchase were funded via bonus payments or equity distributions from Counterclaimant The Smoot Corporation that Mark Cain would not have otherwise been entitled to receive.

49.     The remaining ownership interest of the reorganized Plaintiff was retained by Smoot family members, all shareholders of Counterclaimant The Smoot Corporation.

50.     The reorganization of Plaintiff's ownership structure did not change the fact that Plaintiff was designed to further the interest of Counterclaimant The Smoot Corporation, the now entirely common shareholders of the two entities, and further the Smoot trade name through joint, non-competitive ventures.

51.     Indeed, Plaintiff's President and CEO Mark Cain was familiar with Counterclaimant the Smoot Corporation's "One Company" philosophy.

52.     Under the "One Company" philosophy, all Smoot owned and associated operations were to be run under the same set of standards to assure high quality and protection of the Smoot trade name.

53.     Plaintiff was run with those standards.

54.     After 2005, Plaintiff's President and CEO Mark Cain regularly reported to Counterclaimant The Smoot Corporation's Board of Directors about Plaintiff's operations .

55.     After 2005, Counterclaimant The Smoot Corporation often discussed Plaintiff's operations during its board meetings.

56.     These discussions often involved how Plaintiff's financial situation would affect the financials and operations of Counterclaimant The Smoot Corporation.

57.     Plaintiff and Counterclaimant The Smoot Corporation shared common bonding, insurance and other programs which allowed Plaintiff to enjoy a lower overhead cost and have access to large projects than it otherwise would have.

58.     Counterclaimant The Smoot Corporation's officers, including Mark Cain, routinely assisted with Plaintiff's projects, including quality control management, safety and other matters which would ensure the Smoot name and goodwill to the Smoot name would be maintained.

59.     Because Plaintiff would be owned by family members, who were also shareholders of Counterclaimant The Smoot Corporation, it was understood that Plaintiff would continue to operate for the collective benefit of Counterclaimant The Smoot Corporation and the Smoot brand.

60.     Because Plaintiff would be owned by family members and the shareholders of Counterclaimant The Smoot Corporation, it was understood that Plaintiff would never be operated in a manner to compete with Counterclaimant The Smoot Corporation, its subsidiaries, or affiliates.

61.     Thus, because of the joint interest as well as the control and oversight retained and actively exercised by Counterclaimant The Smoot Corporation, Plaintiff was allowed to utilize the Smoot trade name and the Registered Marks.

62.     However, as detailed fully below, Counterclaimant The Smoot Corporation has learned that Plaintiff has recently undertaken actions to unfairly and deceptively compete against The Smoot Corporation.

63. In taking these unexpected and hostile actions, Plaintiff has infringed on Counterclaimant The Smoot Corporation's trade name, its nationally protected trademarks, and engaged in unfair and deceptive trade practices.

64. Pleading in the alternative, in taking these unexpected and hostile actions, Plaintiff has exceeded the scope of its authority to use and/or the licenses provided by Counterclaimant The Smoot Corporation for its' trade name and its nationally protected trademarks.

65. At no time has Counterclaimant The Smoot Corporation abandoned or waived its rights to assert its protections of its trade name and its nationally protected trademarks in any geographical region, including but not limited to Washington D.C. and the capital region.

66. Indeed, The Counterclaimant Smoot Corporation fully intends to continue and build on its fifty-year legacy in Washington D.C. and the capital region of providing General Contractor and Commercial Building Construction of the superior quality which the public has come to expect from Smoot branded construction operations.

**PLAINTIFF'S USE OF SMOOT CORPORATION'S REGISTERED MARKS**

67. Because Plaintiff was organized to benefit of Counterclaimant The Smoot Corporation and its shareholders (including the Corporation's decision to vest majority ownership in Mark Cain – a Smoot family member, as well as a Smoot Corporation officer and shareholder), Plaintiff was allowed to continue to use Counterclaimant The Smoot Corporation's protected trade name and the Registered Marks.

68. The scope of the permissible use was Counterclaimant The Smoot Corporation's protected trade name and the Registered Marks only extended to non-competitive use while the companies shared common interests.

16

69. The scope of the permissible use of Counterclaimant The Smoot Corporation's protected trade name and the Registered Marks was predicated on active oversight of Plaintiff's use by Counterclaimant the Smoot Corporation.

70. And in practice, the use of the Smoot trade name and Registered Marks by Plaintiff was not unlimited.

71. Plaintiff's use of the trade name and the Registered Marks was closely monitored and controlled by Counterclaimant The Smoot Corporation, including from 2010-2021 when Plaintiff's President Mark Cain was either President or Co-President of Counterclaimant The Smoot Corporation.

72. During the same 2010-2021 period Mark Cain was President and CEO of Plaintiff

73. The protection put in place by Counterclaimant The Smoot Corporation included installing an ownership group and operational setup which would assure that Plaintiff did not compete with Counterclaimant The Smoot Corporation, its subsidiaries, or affiliates.

74. Additionally, Counterclaimant The Smoot Corporation controlled the use of the trade name and Registered Marks through its shared officers, directors, and shareholders.

75. Further, Counterclaimant The Smoot Corporation controlled the quality and good name of the trade name and Registered Marks through exercising oversight in the safety, bidding, marketing, business, and financial oversight and services outlined above, not covered by the ASA.

76. For example, during the first few years of operation under the reorganized structure, Plaintiff would have been insolvent if not for the financial support and investment provided by Counterclaimant The Smoot Corporation.

77. Further, The Smoot Corporation always monitored how the trade name and Registered Marks were utilized on the domain name smootconstructiondc.com through consolidated IT services between the two entities.

78. And Counterclaimant The Smoot Corporation's President routinely directed the operations of Plaintiff. (*See* Exhibit G, representative examples of such direction).

79. For example, Plaintiff's operation, budget, revenue, profits, losses, and outlook were routinely discussed during Counterclaimant Smoot Corporation's Board Meetings.

80. Plaintiff's President and CEO, until the last year, directed Plaintiff's operations from Counterclaimant The Smoot Corporation's Columbus, Ohio headquarters in his position as President of Counterclaimant The Smoot Corporation.

81. From 2005 through August 2021, Counterclaimant The Smoot Corporation ensured that Plaintiff used the trade name and the Registered Marks to the benefit of Counterclaimant The Smoot Corporation and without detriment to its' well-known reputation for providing quality services.

## OPERATION OF PLAINTIFF FROM 2005-AUGUST 2021

82. It was understood that although Plaintiff's ownership structure would reorganize, it would continue to practically function as it did as a wholly owned subsidiary.

83. To that end, on May 1, 2005, Plaintiff entered into an Administrative Services Agreement ("ASA") with Counterclaimant The Smoot Corporation to provide certain services. See Exhibit A.

84. However, the ASA does not reflect all of the interrelated operations between Plaintiff and Counterclaimant The Smoot Corporation.

85.     In addition to the ASA, Counterclaimant The Smoot Corporation provided the following integrated operations and services, not required under the ASA including, but not limited to:

    a.    Comprehensive accounting and financial services including consolidated accounting and holding services for Plaintiff;

    b.    Estimating services for construction projects;

    c.    Worksite safety compliance and oversite for Plaintiff;

    d.    Webhosting and web design;

    e.    Advice and strategic plaining through Board discussions;

    f.    Providing marketing and publicity;

    g.    Providing financial assistances;

    h.    Providing umbrella benefits for bonding and insurance.

86.     These functions were provided to control and monitor the quality and type of uses Plaintiff employed Counterclaimant the Smoot Corporation's trade name and Registered Marks.

87.     During this period, Plaintiff's President and CEO Mark Cain regularly reported to Counterclaimant The Smoot Corporation Board about D.C. operations. (*See* Board Minutes, attached hereto as Exhibit H).

88.     During this period, Plaintiff's operations, including its use of the Smoot trade name and the Registered Marks, was directly controlled by Mark Cain – i.e., Counterclaimant's President.

**UNDER MARK CAIN'S LEADERSHIP, THE SMOOT CORPORATION CONTINUES THE ONE COMPANY PHILOSOPHY INSTALLED BY LEWIS R. SMOOT, SR.**

89.     As Chairman, CEO, and President of The Smoot Corporation, Lewis R. Smoot, Sr. installed the "One Company" philosophy, directing that all Smoot named operations would be jointly operated at the senior management levels.

90.    During his tenure as President and CEO of the Smoot Corporation, Mark Cain vehemently adhered to that philosophy.

91.    In 2020, Plaintiff's President and CEO Mark Cain authored a document outlining the relationship of the two entities. A true and accurate copy of this document is attached hereto as Exhibit I.

92.    This document also outlined to current and longstanding roles of the senior leaders.

93.    In this document, Mr. Cain identified that the President and CEO of The Smoot Corporation was responsible for:

    a.    Overseeing the "profit and loss accountability for" Smoot operations, including Plaintiff's operations.

    b.    Overseeing the "marketing/proposal development" for Smoot operations, including Plaintiff's operations.

    c.    Overseeing the development and growth of all key executives, including Plaintiff's executives.

94.    Further, Mr. Cain identified that the Chief Financial Officer of The Smoot Corporation was responsible for:

    a.    "Executive oversight of project financial reporting" for Smoot operations, including Plaintiff.

    b.    "Participate in quarterly financial reviews" for Smoot operations, including Plaintiff.

    c.    Represent The Smoot Corporation, in "tax planning and strategic planning" for Smoot operations, including Plaintiff.

95. As of 2020, Plaintiff's President and CEO Mark Cain identified a key objective of the leadership organization as fostering the "One Company Approach, no separation." (Ex. I).

96. Additionally, Plaintiff's President and CEO drafted a chart outlining the current (as of 2020) operating structure under the "One Company" approach:



97. Plaintiff is listed under this organizational chart as a "regional operation" of The Smoot Corporation. (*See* Ex. I).

98. Additionally, when reorganization was discussed, Plaintiff's President and CEO Mark Cain was adamant that any reorganization of the Smoot entities must maintain the "One Company" philosophy: "In any revised organization structure at Smoot it is absolutely mandatory that the "One Company philosophy" be adhered to, despite the separate legal entity structure in the regions." (*See* Ex. I).

**MARK CAIN IS TERMINATED FROM HIS ROLES AT THE SMOOT CORPORATION AND IN RESPONSE TURNS PLAINTIFF INTO A COMPETITOR**

99.     Towards the end of his tenure as President/Co-President of Counterclaimant The Smoot Corporation, Mark Cain effectively defrauded Counterclaimant The Smoot Corporation into funding an investment into a local Columbus project through which Mr. Cain would be the manager and receive a high percentage of profit, before Counterclaimant The Smoot Corporation was paid back.

100.    Mark Cain's actions greatly disappointed Lewis Smoot, Sr., who signed a document without looking at it, based upon Mark Cain's representations that it contained terms, different than were actually contained in the document.

101.    On September 21, 2020, Mark Cain and Lewis R. Smoot, Jr. were elected as Co-Presidents of Counterclaimant The Smoot Corporation.

102.    On or around July 30, 2021, it became clear that there was a lack of communication, collaboration, and teamwork on Mark Cain's part.

103.    On July 30, 2021, the Counterclaimant's Board determined it was in the best interest of Counterclaimant The Smoot Corporation to elect Lewis R. Smoot, Jr. as Chairman of the Board, CEO, and President of Counterclaimant The Smoot Corporation.

104.    On July 30, 2021, Mark Cain was appointed as Special Projects Coordinator.

105.    As of July 30, 2021, through present, Mark Cain retained his majority ownership of Plaintiff as well as his role as President and CEO of Plaintiff.

106.    On August 2, 2021, due to his actions and inactions, Mark Cain was terminated as an employee of Counterclaimant The Smoot Corporation.

107.    On September 21, 2021, Mark Cain resigned as a Director from Counterclaimant The Smoot Corporation.

22

108.    Upon information and belief, on or around July 30, 2021, Plaintiff and Mark Cain began to plan and took actions to put Plaintiff into direct competition with Counterclaimant The Smoot Corporation, against the intention and longstanding practice of the inter-corporate relationship.

**WHILE STILL CO-PRESIDENT OF THE SMOOT CORPORATION, MARK CAIN, AS PRESIDENT AND CEO OF PLAINTIFF. PREPARES THAT ENTITY FOR DIRECT COMPETITION AGAINST THE SMOOT CORPORATION**

109.    In January of 2021, Mark Cain, as president and CEO of Plaintiff, refused to consent to an equity distribution for two Smoot led joint ventures as would have been a normal and customary practice.

110.    The refusal to consent to equity distributions negatively impacted the balance sheets of Counterclaimant The Smoot Corporation.

111.    In March of 2021, Mark Cain, as President and CEO of Plaintiff, refused to consent for Plaintiff's inclusion in a group SDI plan, which Plaintiff had previously participated in for approximately 10 years, as would have been a normal and customary practice.

112.    Mark Cain, as President and CEO of Plaintiff, attempted to remove Counterclaimant The Smoot Corporation's CFO, Nathan Robinson, as an authorized signer on the D.C. Business Investment Reserve Account.

113.    From May through July 2021, Mark Cain, as President and CEO of Plaintiff, refused to execute necessary documents to secure the renewal of credit lines for Counterclaimant The Smoot Corporation and Plaintiff, as would have been a normal and customary practice.

114.    On August 3, 2021, Plaintiff's President and CEO, Mark Cain *personally* withdrew Six Million Dollars ($6,000,000.00) from a joint venture account without prior notice.

115. 51% of the amount Cain withdrew (approximately Three Million and Sixty-Thousand Dollars), as referenced in the preceding paragraph was supposed to be consolidated into Counterclaimant The Smoot Corporation holding account as part of a daily sweep, as was custom.

116. Prior to August 3, 2021, the daily sweep into Counterclaimant The Smoot Corporation holding account from the Plaintiff operating account had been standard practice for over fifteen years, approved by Mark Cain.

117. These actions, and others, were designed to give Plaintiff an unfair advantage as it pivoted—unbeknownst to Counterclaimant The Smoot Corporation—into direct competition with Counterclaimant The Smoot Corporation.

**PLAINTIFF AND MARK CAIN SUBMIT A FALSIFIED CERTIFICATION TO CAPITAL REGION MINORITY SUPPLIER DEVELOPMENT COUNCIL**

118. Upon information and belief, in September of 2021, Plaintiff, applied for certification to the Capital Region Minority Supplier Development Council (the "D.C. Application"). A copy of what is believed was submitted is attached hereto as Exhibit J.

119. The Capital Region Minority Supplier Development Council advances business opportunities for certified minority business enterprises in the D.C. capital region.

120. Certified membership in the Capital Region Minority Supplier Development Council is of significant economic and reputational value to Plaintiff

121. Certified membership application requires the notarized signature of the shareholders or partners of the business seeking certification.

122. The D.C. Application purports to contain the notarized signatures of Plaintiff shareholders Mark Cain, Lewis R. Smoot, Sr., Lewis R. Smoot Jr., Genevieve Smoot, and Candace Cain.

123. Lewis R. Smoot, Sr., did not sign the D.C. Application.

24

124.    Lewis R. Smoot Jr. did not sign the D.C. Application.

125.    Genevieve Smoot did not sign the D.C. Application.

126.    It is believed that Plaintiff and Mark Cain took an existing signature page from an Ohio application and superimposed it on the D.C. Application. A true and accurate copy of the Ohio application is attached hereto as Exhibit K.

127.    One of Plaintiff's employees fraudulently notarized the document, which is a crime.

128.    The notarization states the signatures were witnessed on September 26, 2021.

129.    However, the dates next to each signature reflect the document was signed by the signees March 22-26, 2021.

130.    It appears the D.C. Application was a falsified submission.

131.    Such conduct threatens the quality, integrity, and reputation of the "Smoot" trade name and the Registered Marks.

132.    A comparison of the D.C. Application signature page to the Ohio application shows the signatures of Lewis R. Smoot, Sr., Lewis R. Smoot Jr., Genevieve Smoot all contain the same date as those appearing on the D.C. Application:

133.    Conduct such as submitting a falsified application to The Capital Region Minority Supplier Development Council, under the Smoot trade name, damages the Smoot trade name and Registered Marks which are recognized nationally to convey trust and integrity.

**PLAINTIFF'S INFRINGEMENT AND DECEPTIVE PRACTICES ARE EXEMPLIFIED THROUGH ITS WEBSITE, WHICH IS A BLATANT ATTEMPT TO CONFUSE THE PUBLIC**

134.    From 2005 until 2021, Counterclaimant The Smoot Corporation provided webhosting, content, and information for Plaintiff's website.

135.    The Smoot trade name and the Registered Marks used as part of the site during that period were done so with Counterclaimant The Smoot Corporation's consent given the shared corporate control, Counterclaimant The Smoot Corporation's oversight of the use, the noncompetitive nature of the entities, and because the use was to the benefit of Counterclaimant The Smoot Corporation, its affiliates, and related entities.

136.    Plaintiff is now exclusively in control of a website at https://smootconstructiondc.com/ which previously The Smoot Corporation maintained access and control over.

137.    Plaintiff's website repeatedly uses the Smoot trade name and the Registered Marks without the consent of The Smoot Corporation.

138.    The use of the mark "Smoot" in connection with General Contractor and Commercial Building Construction infringes on Registration '887's national protection of the "SMOOT" character mark:

26



139. The front page of the Plaintiff website indicates Plaintiff has been in operation for "five decades" and is in its "third generation of family leadership:

## KNOW **OUR WORK.** KNOW **SMOOT.**

For five decades, Smoot Construction Company of Washington, D.C. has provided construction services with character, humility, integrity, pride, and performance. These guiding principles have led to the successful completion of nearly 100 construction projects in Maryland, Virginia and Washington, D.C. Beyond the numbers are the people of Smoot DC- from its third generation family leadership to its dedicated construction professionals.

Our team of experts, leaders and partners is focused on building more than buildings. We are building last relationships, turning our clients' dreams into reality and maximizing the value of their construction investment.

140. Plaintiff, as presently organized, has not been in operation for five decades.

141. Plaintiff, as presently organized, is under the first generation of Mark Cain's leadership—not the third generation of Smoot leadership as claimed.

142. The purpose of these statements is to confuse the public and blur the lines between Counterclaimant The Smoot Corporation and a new competing entity, Plaintiff

143. Counterclaimant The Smoot Corporation employees are featured prominently in Plaintiff's website, despite the fact that these individuals are not Plaintiff's employees.

144. The front page of the website depicts an employee wearing a hardhat clearly advertising the Smoot Design Mark protected by Registration '888:

---

[2] Accessible at https://smootconstructiondc.com/ (Last accessed 4/10/2022 at 10:30 a.m. EST)
[3] *Id*. (Last accessed 4/10/2022 at 10:30 a.m. EST)



145.    Under the "Services" tab, the nationally protected Smoot Design appears again on

the logo of an employee's shirt:



146.    Further down the same page, the nationally protected Smoot Design Mark appears

on another employee's hardhat:



6

147.    Upon information and belief, Plaintiff is using clothing, equipment, and marketing material in the field baring Counterclaimant's protected trade name and the Registered Marks.

148.    Under services, Plaintiff claims to have "50 years" experience in Washington D.C. construction management:

**Construction Management**

At Smoot Construction, we take pride in our construction management approach and the successes it has brought for over 50 years in the Washington, DC area. SmootDC    7

149.    Plaintiff, as presently organized, does not have "over 50 years" of construction management experience.

150.    However, Counterclaimant The Smoot Corporation does have over 50 years of construction management experience in the D.C. and capital region.

151.    Plaintiff's use of this statement is an attempt to take credit for Counterclaimant The Smoot Corporation's history in the area and confuse the public.

152.    Likewise, the "About" section of the website makes similar misleading statements:

---

[6] *Id*. (Last accessed 4/10/2022 at 10:30 a.m. EST)
[7] *Id*. (Last accessed 4/10/2022 at 10:30 a.m. EST)

# KNOW **INTEGRITY.** KNOW **CHARACTER.**

With more than five decades of growth and experience in general contracting, design-build, and construction management, Smoot Construction has created a legacy of excellence and a reputation for hard work and high standards in the National Capital region.

The SmootDC team is known for professionalism, quality, and honesty—forging employee and client relationships that span decades.

[8]

153.     Further, the repeated use of "Smoot Construction" throughout the website infringes on the nationwide protection afforded by the '887 Registration:

# LEADING **SMOOT CONSTRUCTION**

[9]

154.     Additionally, the D.C. website appropriates Counterclaimant The Smoot Corporation's guiding principles, word for word:

---

[8] Avalible at https://smootconstructiondc.com/about/ (Last accessed 4/10/2022 at 10:30 a.m. EST)
[9] *Id*. (Last accessed 4/10/2022 at 10:30 a.m. EST)

30

| From The Smoot Corporation Website:[10] | From the Plaintiff Website:[11] |
|---|---|
|  |  |
|  |  |

155. The Plaintiff website has a video of the then Chairman and CEO of Counterclaimant

The Smoot Corporation, Lewis R. Smoot, Sr., posted on its "News" page:

---

[10] Avalible at https://smootconstruction.com/about/ (Last accessed 4/10/2022 at 10:30 a.m. EST)
[11] Avalible at https://smootconstructiondc.com/about/ (Last accessed 4/10/2022 at 10:30 a.m. EST)



During a recent visit to the MLK Library Restoration project, corporate officers from Smoot
Construction and Gilbane Building Company reminisced about past construction projects
and current partnerships. It was 50 years ago that Lewis R. Smoot Sr. and Tom Gilbane
shook hands and built their first project in the Metropolitan Washington area. Now in their
80s, these respected construction industry leaders are still working together, a legacy that
will last generations.

156.    The video repeatedly depicts the Design Mark protected by the "888 Registration:



157.    During the video, Lewis R. Smoot, Sr. talks about the history between
Counterclaimant The Smoot Corporation and the Gilbane Building Company.

158.    The use and inclusion of this video on the Plaintiff website can only be intended to
confuse the public.

159.    Counterclaimant The Smoot Corporation has not consented to the use of the trade
name and Registered Marks on Plaintiff's website.

32

**PLAINTIFF'S IS CURRENTLY USING COUNTERCLAIMANT THE SMOOT CORPORATION'S TRADE NAME AND REGISTERED MARKS TO SUBMIT CONSTRUCTION PROPOSALS TO THE PUBLIC CONSUMER**

160. Plaintiff is presently using the Registered Marks, the Smoot trade name, and the family history of Counterclaimant The Smoot Corporation to submit construction proposals to prospective customers.

161. For example, Plaintiff used, or is using, the Registered Marks, the Smoot trade name, and the family history to submit a construction proposal to the Harvard University (the "Harvard Project"):



162. The Harvard Project Proposal claims Plaintiff is "3rd generation family owned" in highlighting the benefits of the company:



163. Plaintiff is not third generation family owned.

33

164. Thus, the only conceivable purpose for this statement, appearing next to Counterclaimant The Smoot Corporation's protected marks is to confuse the public.

165. A true and accurate copy of the Harvard Project Proposal is attached hereto as Exhibit L.

166. Counterclaimant The Smoot Corporation did not consent to the use of its Registered Marks, the Smoot trade name, and the family history of Counterclaimant The Smoot Corporation for use in the Harvard Project Proposal.

167. Additionally, Plaintiff submitted a proposal using the Registered Marks, the Smoot trade name, and the family history for a project at Bowie State University (the Bowie Project).

168. A true and accurate copy of the Bowie Project Proposal is attached hereto as Exhibit M.

169. The Bowie Project Proposal uses the Smoot trade name and protected marks.

170. Additionally, the Bowie Project Proposal attempts to capitalize on the family history of Counterclaimant The Smoot Corporation:



171.    The majority of the student residences referenced above were completed in Columbus, Ohio at The Ohio State University.

172.    Counterclaimant The Smoot Corporation consent to the use of its Registered Marks, the Smoot trade name, and the family history of the Smoot Corporation for use in the Bowie Project Proposal.

173.    The Smoot Corporation was unaware of these proposals until April 2022.

**PLAINTIFF'S INFRINGEMENT AND DECEPTIVE PRACTICES ARE FURTHER EVIDENCED BY COMMENTS MADE TO THE MEDIA—ANOTHER ATTEMPT TO CONFUSE THE PUBLIC**

174.    Plaintiff has made it clear through the media that it not only intends to unfairly compete and infringe on Counterclaimant The Smoot Corporation in Washington D.C. and the capital region, but also in Ohio and other geographic areas.

175.    On March 31, 2022, Plaintiff announced expansions into "New England and the Midwest with two new subsidiaries."[12]

176.    In announcing the expansion, as President and CEO of Plaintiff, Mark Cain gave an interview to the Columbus Dispatch he was **"building on his grandfather's legacy"** with Smoot DC's expansion into the Columbus, Ohio area. A true and accurate copy of the Dispatch article is attached hereto as Exhibit N.

177.    As President and CEO of Plaintiff, Mark Cain, told the Columbus Dispatch he was planning to "conquer new markets."

178.    On November 11, 2021, Plaintiff registered an entity "Smoot Boston, LLC" in Massachusetts to conduct business in that state.

---

[12] https://smootconstructiondc.com/uncategorized/a-legacy-continues-with-smootdc-expansion/

179.    Upon information and belief, Smoot Boston is a wholly owned subsidiary of Plaintiff

180.    On March 21, 2022, Plaintiff registered a foreign corporation in Ohio under the name "S.Cain Development and Construction (Smoot Construction Company of Washington D.C.)"

181.    The "new markets" are an attempt to further infringe on Counterclaimant The Smoot Corporation's protected trademark and the Registered Marks in geographic regions outside the D.C. capital area. Columbus is not a new market to the Smoot trade name nor the Registered Marks.

182.    Indeed, the photo used in the Dispatch article depicts Mark Cain in the Columbus Board room of Counterclaimant The Smoot Corporation:



Mark Cain, president and CEO of SmootDC, is expanding the business to Boston and Columbus. [13]

183.    Mr. Cain's statements in the article demonstrate an intent to confuse the public.

184.    By referencing the legacy of his grandfather, Mr. Cain was making a direct reference to Counterclaimant The Smoot Corporation – which is the descendant of his grandfather's company.

---

[13] *Id*.

36

**PLAINTIFF HAS CONVERTED ASSETS OF THE SMOOT CORPORATION
AND SPOLIATED EVIDENCE**

185.    Mr. Cain, while President of Counterclaimant The Smoot Corporation, sent a complete copy of Counterclaimant The Smoot Corporation's financial statements to an officer of Plaintiff, lacking any business reason to do so.

186.    Upon information and belief, Plaintiff stole industry contacts and proprietary information of Counterclaimant The Smoot Corporation.

187.    Plaintiff has converted and refused to return Counterclaimant The Smoot Corporation assets, including computer systems.

188.    The computer system in question is proprietary bidding software, designed and owned by Counterclaimant The Smoot Corporation.

189.    Mr. Cain had the Registered Marks and their applications emailed to himself before he lost access to The Smoot Corporation's Computer System.  (See Emails, attached hereto as Exhibit O).

190.    Additionally, while still having access to Counterclaimant The Smoot Corporation email system, Plaintiff's CEO Mark Cain deleted emails and other evidence of his activity to cover his tracks.

**JURISDICTION AND VENUE**

191.    Pursuant to 15 USCA 1121 and 28 USCA 1331 and 1338, this Court has original jurisdiction over the claims that are the subject of this Counterclaim, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

192.    Venue is proper in this Court pursuant to 28 USCA 1391 (b)(1) and (2).

193.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 USCA 1367.

## **COUNT ONE**

### *Service Mark Infringement Under 15 U.S.C.A. 1114*

194.    Counterclaimant realleges and incorporates all preceding paragraphs as if fully rewritten hereunder.

195.    Counterclaimant The Smoot Corporation is the owner/registrant of the '887 and '888 Marks that are being used and have continuously been used in commerce and in connection with general contractor and commercial building construction services offered by Counterclaimant The Smoot Corporations and its authorized subsidiaries and affiliated entities.

196.    Plaintiff is currently using the '887-character mark "SMOOT" in commerce related to general contractor and commercial building construction services.

197.    Plaintiff is currently using the '888 design mark throughout its website and in other portions of its business to included branded clothing, signs, and advertisements.

198.    Plaintiff is not authorized and does not have consent or permission to use the Registered Marks or any substantially similar ones.

199.    Plaintiff's colorable imitation of Counterclaimant The Smoot Corporation's Registered Marks on substantially identical services is intended to, and likely will cause confusion, mistake, or is intended to actually deceive consumers in violation of 15 U.S.C.A. 1114.

200.     As a direct and proximate result of Plaintiff's infringement, Counterclaimant The Smoot Corporation has suffered economic harm at an amount to be proven at trial and suffer irreparable harm.

201.     As such, Plaintiff is liable to Counterclaimant The Smoot Corporation under 15 U.S.C.A. 1114.

202.     Plaintiff's unauthorized use of the Registered Marks is an intentional and willful appropriation and infringement of Counterclaimant The Smoot Corporation's Registered Marks, and Plaintiff is liable to Counterclaimant The Smoot Corporation for treble damages and attorney's fees under 15 U.S.C.A. 1117.

## COUNT TWO

### *Lanham Act Violations Under 15 U.S.C.A. 1125(a)*

203.     Counterclaimant realleges and incorporates all preceding paragraphs as if fully rewritten hereunder.

204.     In connection with substantially identical services offered by Plaintiff, it is using the "Smoot" service mark in commerce.

205.     The acts of Defendants complained of herein constitute false designation of origin and association and unfair competition, which are likely to cause confusion or mistake as to its affiliation, connection, or association with Counterclaimant The Smoot Corporation, and/or as to its origin, sponsorship, or approval of Counterclaimant The Smoot Corporation's goods and services by Plaintiff, in violation of 15 U.S.C.A. 1125(a).

206.     Plaintiff's use of that name is likely to cause dilution of Counterclaimant The Smoot Corporation's trade name and Registered Marks.

207.    As a direct and proximate result, Counterclaimant The Smoot Corporation has and will be damaged by Plaintiff's conduct in an amount to be determined at trial and also suffer irreparable harm.

208.    As such, Plaintiff is liable to Counterclaimant The Smoot Corporation pursuant to 15 U.S.C.A. 1125(a).

209.    Plaintiff's false association with Counterclaimant The Smoot Corporation's trade name and Registered Marks is intentional and willful, and thus it is liable to The Smoot Corporation for treble damages under 15 U.S.C.A. 1117.

## **COUNT THREE**

### *Lanham Act Violations Under 15 USCA 1125(d)*

210.    Counterclaimant realleges and incorporates all preceding paragraphs as if fully rewritten hereunder.

211.    The Registered Marks and the Smoot trade name became distinctive prior to the registration by Defendants of the www.smootconstructiondc.com domain name.

212.    Plaintiff has registered and use a domain name that is confusingly similar to Counterclaimant The Smoot Corporation's trade name and Registered Marks and likely to cause consumers to mistakenly believe that Plaintiff's services are sponsored or approved by Counterclaimant The Smoot Corporation or are otherwise affiliated with Counterclaimant The Smoot Corporation or offered by Plaintiff with the permission of Counterclaimant The Smoot Corporation.

213.    Plaintiff has utilized the domain name with the bad faith intent to profit from Counterclaimant The Smoot Corporation's trade name and Registered Marks.

214.    Plaintiff's activities constitute violations of the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C.A. 1125(d).

215.    As a direct and proximate result, Counterclaimant The Smoot Corporation has and will be damaged by Plaintiff's conduct in an amount to be determined at trial and also suffer irreparable harm.

216.    Consequently, Plaintiff is liable to Counterclaimant The Smoot Corporation pursuant to 15 U.S.C.A. 1125(d).

## COUNT FOUR

### *Ohio's Deceptive Trade Practices Act – R.C. 4165.02*

217.    Counterclaimant restates and re-alleges all of the foregoing paragraphs as if fully rewritten herein.

218.    Plaintiff has willfully engaged in a deceptive trade practice in the course of its business by causing likelihood of confusion or misunderstanding as to their affiliation, connection, or association with Counterclaimant The Smoot Corporation.

219.    As a direct and proximate result, Counterclaimant The Smoot Corporation has and will be damaged by Plaintiff's conduct in an amount to be determined at trial and suffer irreparable harm.

220.    Consequently, Plaintiff is liable to Counterclaimant The Smoot Corporation pursuant to R.C. 4165.02.

## COUNT FIVE

### *Trademark and Trade Name Infringement/Unfair Competition – Ohio Common Law*

221.    Counterclaimant restates and re-alleges all of the foregoing paragraphs as if fully rewritten herein.

222.     This is an action under Ohio common law for trade name and service mark infringement and unfair competition.

223.     The acts of Plaintiff complained of herein constitute willful trade name and service mark infringement in violation of the common law of the State of Ohio.

224.     The acts of the Plaintiff complained of herein constitute willful unfair methods of competition in violation of the common law of the State of Ohio, including passing off Plaintiff's goods and services as those of Counterclaimant The Smoot Corporation.

225.     Plaintiff's unauthorized use of the "SMOOT" trade name, and the Registered Marks, and the "smootconstructiondc.com" website has caused and is likely to cause confusion, to cause mistake, or to deceive, in violation of Ohio common law.

226.     Counterclaimant has been damaged and is being irreparably harmed.

## COUNT SIX

### *Injunctive Relief*

227.     Counterclaimant restates and re-alleges all of the foregoing paragraphs as if fully rewritten herein.

228.     As set forth above, Counterclaimant The Smoot Corporation is suffering and will continue to suffer irreparable damage unless Plaintiff is preliminarily and permanently enjoined from its current and further infringement on the Smoot trade name and Registered Marks.

229.     Counterclaimant The Smoot Corporation has no adequate remedy at law because an award of money damages will not fully compensate it for the continued damage caused by Plaintiff's conduct.

230.     Counterclaimant The Smoot Corporation is entitled to a preliminary and permanent injunction enjoining Plaintiff from infringing on Counterclaimant The Smoot Corporation's trade

name and Registered Marks under 15 U.S.C.A. 1116. Similarly, Counterclaimant The Smoot Corporation is entitled to a preliminary and permanent injunction under R.C. 4165.03.

## PRAYER FOR RELIEF

*WHEREFORE*, Counterclaimant, The Smoot Corporation, requests that judgment be rendered in its favor and against the Plaintiff ordering, among other things:

- A temporary restraining order, preliminary injunction and permanent injunction precluding Plaintiff from engaging in infringement and deceptive trade practices, including but not limited to the use of:

   The "Smoot" name in connection with any construction or building services;

   Counterclaimant The Smoot Corporation's Registration Marks, trade name, and trade dress in any form or fashion;

   Photographs, video, and media containing any depiction of or reference to: Counterclaimant The Smoot Corporation, its founders, shareholders, corporate history, and projects/work completed by Counterclaimant The Smoot Corporation;

   Counterclaimant The Smoot Corporation's Proprietary bidding software;

   Content from Counterclaimant The Smoot Corporation's website;

   The domain name https://smootconstructiondc.com; and

   False and/or misleading statements about Plaintiff's corporate history and make-up, experience in the construction trades and related industries, and geographical regions within which it operates.

- A temporary restraining order, preliminary injunction and permanent injunction ordering Plaintiff to return all assets of Counterclaimant The Smoot Corporation, including Counterclaimant The Smoot Corporation's proprietary bidding software and financial data.

43

- Damages under 15 U.S.C.A. 1117(a), R.C. 4165.03, and Ohio Common Law, including, but not limited to, Plaintiff's profits, damages sustained by the Counterclaimant, and the costs of this action;

- Treble the amounts awarded to Counterclaimant The Smoot Corporation under 15 U.S.C.A. 1117(a);

- Cancellation of Defendant's trade name "Smoot Construction Co. DC" "SmootDC" "Smoot Boston LLC" S. Cain Construction ("Smoot of Ohio");

- Preliminary and permanent injunctive relief under 15 U.S.C.A. 1116 and R.C. 4165.03(B);

- Cancellation, forfeiture, or transfer of Plaintiff's domain name under 15 U.S.C.A. 1125(d);

- Statutory damages under 15 U.S.C.A. 1117 (d) of $100,000;

- Reasonable attorney's fees under 15 U.S.C.A. 1117(a) and R.C. 4165.03(B); and

- Such further relief as the Court may deem just and equitable.


Pursuant to 28 U.S.C.S. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on  4|22|22

Lewis R. Smoot, Jr., Chairman, CEO,
and President of The Smoot Corporation


Respectfully submitted,

*s/Patrick Kasson*
Patrick Kasson (0055570)
Thomas N. Spyker (0098075)
**Reminger Co., L.P.A.**
200 Civic Center Dr., Suite 800
Columbus, Ohio 43215
TEL No.:  (614) 228-1311
FAX No.:  (614) 232-2410
pkasson@reminger.com
tspyker@reminger.com

44

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was filed using the Court's e-Filing System this 25th day of April, 2022 and that service will be accomplished via the System upon all counsel of record.

*s/Patrick Kasson*
Patrick Kasson (0055570)

## **JURY DEMAND**

Defendants demand a trial by the maximum number of jurors permitted.

Respectfully submitted,

*s/Patrick Kasson*
Patrick Kasson (0055570)

45